

### OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable Royall R. Watkins, President
State Board of Education
Austin, Texas

Dear Sir:

Opinion No. O-6104
Re: Claim of the Athens
Independent School
District for tuition
of pupils from Walnut
Creek Common School
attending the Athens
School.

We are in receipt of your letter of recent date
requesting our opinion on the question stated therein. Your
letter is as follows:

"The State Board of Education, at a recent
meeting, unanimously passed a resolution setting
aside its former action denying the claim of the
Athens Independent District for tuition of pupils
from Walnut Creek Common School attending the Athens
School under an alleged contract by and between the
two districts.

"Your office has been furnished with data and
information on the hereinafter question propounded
to you, and the same has never been answered by you
for the reason that your Department took the posi-
tion that it was within the province of the State
Board of Education only to ask the question propound-
ed; therefore at the last meeting above referred to,
the State Board of Education authorized me, as Pres-
ident of the State Board of Education, to propound
the question heretofore submitted to-wit:

"'Since the contracting district had
complied with all requirements for re-
ceiving aid in this case, could the fail-
ure of these two officials to perform a
ministerial duty, because of an alleged

erroneous interpretation of the law, de-
prive the contracting districts of the
legal right which they had under the pro-
visions of the rural aid law, when the
failure to perform their duty was without
fault, knowledge or consent of either of
the contracting parties?'

"Let me suggest that you carefully review
the attached correspondence in order that you can
have before you all of the facts and circumstances
surrounding this situation."

We understand the facts to be that the Walnut Creek
Common School District No. 10 of Henderson County contracted with
the Athens Independent School District, in which contract it was
agreed that all white and colored scholastics were transferred to
the Athens Independent School District, except those transferred to
another district prior to August 1, 1942.

The contracted (sending) district agreed to pay monthly
to the receiving school:

(a) All State and county available funds as
received;

(b) All local maintenance funds as
collected.

The receiving school agreed to furnish accredited
school facilities for a term of nine (9) months to all white and
colored scholastics of the sending district, and to cooperate with
the County Board in furnishing transportation facilities to all
pupils living more than two and one-half miles from the receiving
school. It was further agreed that the receiving school shall
collect additional tuition provided in the Rural Aid Law.

The contract was duly executed and filed in the office
of the County Superintendent of Henderson County on July 6, 1942,
but was not approved by the County Superintendent and was not for-
warded to Austin for approval of the State Superintendent of Public
Instruction. Neither school district was notified that the contract
was not approved and the Superintendent of the Athens schools was of
the opinion that it had been approved until elementary tuition aid
was refused the following summer.

It is admitted that the pupils of the Walnut Creek District were taught in the Athens Independent School District according to the terms of the contract, and the only question is whether the failure of the County Superintendent and the State Superintendent to approve the contract operates to "deprive the contracting districts of their legal rights which they had under the provisions of the Rural Aid Law."

The budget of Walnut Creek District and all other requirements prerequisite for receiving State Aid were duly filed with the State Superintendent prior to October 1, 1942.

The County Superintendent gave as a reason for not approving the contract that she had a conversation over the telephone with an assistant in the State Superintendent's office, in which conversation she was told that it would be best to secure individual transfers and not send in the contract, and that this would in no way lessen the amount of money that the Athens district would receive. This information was given to the County Superintendent a few days prior to our Opinion No. O-5413, in which opinion we held that individual transfers do not come within the provisions of Section 2 of Article 8 of the Rural Aid Law, because they are not contracted under the provisions thereof.

Said Section 2, Article 8 of said law in effect at the time the contract was executed reads as follows:

"For the school years thereafter, upon the agreement of the Board of Trustees of the districts concerned or on petition signed by a majority of the qualified voters of the district and subject to the approval of the county superintendent, and the State Superintendent, a district which may be unable to maintain a satisfactory school may transfer its entire scholastic enrollment for one year to an accredited school of higher rank. If the receiving school receives State Aid, the scholastic census rolls both white and colored shall be combined, the per capita apportionment shall be paid direct to the receiving school, all local taxes of the sending contracting district, except those going to the interest and sinking fund shall be credited to the receiving school by the Tax Collector as collected, and the teacher-pupil quota shall be based on the combined census total. If the receiving school is not a State Aid school, the scholastic census rolls both white and colored shall be combined, the per capita apportionment shall be paid direct to the receiving school, all local taxes of the sending contracting district except those going to the

interest and sinking fund shall be credited to the receiving school by the Tax Collector as collected, and the sending contracting district will be eligible for as much Salary Aid as is necessary to supplement the State Available and Local Maintenance Funds, on the scholastics from the sending district attending a school in the receiving district, to cover the approved cost of instruction per scholastic in the receiving school, provided that such approved cost shall not exceed Seven Dollars and Fifty Cents ($7.50) per month for high school students or Five Dollars ($5.00) per month for elementary students."

It will be observed that Section 2 of Article 8 of the Rural Aid Law in effect at the time this contract was executed provides that same shall be "subject to" the approval of the County Superintendent and the State Superintendent.

Therefore, the question presented for our determination is this: Does the transfer or agreement in question require the approval of the County Superintendent and the State Superintendent before either of the contracting districts is eligible for salary aid under Section 2 of Art. 8 aforesaid?

In our opinion, such approval is required.

In the case of McCorkel v. District Trustees, etc., (Civ. App.) 121 S. W. (2) 1048, 1052, a similar provision contained in a previous Rural Aid and Equalization Fund Appropriation, was considered by the Court. The following quotations from said opinion are enlightening:

"Also, in either case (either by agreement of the trustees of the districts concerned or on signed petition by a majority of the qualified voters), we think the transfer is to be made 'subject to the approval of the County Superintendent and State Superintendent.' . . The opinion we do express is that the subject matter of section 17 (of Chap. 474, Gen'l. and Spec. Laws of 1937, p. 1259) is not the authorization of contracts, but of transfers to be made, not by the County Superintendent as in case of other transfers (Vernon's Ann. Civil Statutes, Art. 2696), but by the trustees of the district (which may be unable to maintain a satisfactory school), under the circumstances and conditions prescribed." (Emphasis ours.)

Certainly, the Legislature had reason for requiring the approval of both County and State Superintendents of all transfers to be effected under the provisions of Section 2 of Art. 8, supra. It must not be overlooked that transfers of entire scholastic enrollments, allowed under this section, are only authorized when districts are unable to maintain satisfactory schools, and then only for one year in each instance. Thus, the trustees of the proposed sending district might determine that it is unable to maintain a satisfactory school. The County and State Superintendents, or either of them, after investigation and due consideration, might agree or disagree with said conclusion. If they agreed, their approval would be given to the transfer. Otherwise it would be withheld. It is clear, therefore, that such approval is not simply a ministerial requirement. It is to be based upon discretion and judgment. It is a quasi-judicial function. When an executive officer, in the exercise of his functions, is required to pass upon facts and to determine his action by the facts found, such is sometimes called a quasi-judicial function. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N.S.) 681. Also see Baldacchi v. Goodet (Civ. App.) 145 S. W. 325, 328, (Error Refused).

The file submitted contains a letter from the County Superintendnat to Mr. W. B. King, Auditor, State Board of Education, dated Aug. 30, 1943. The following paragraph is quoted therefrom:

"There was no intention of injury to Athens in any way and we were assured by the State Department that no injury would be done in changing from a district contract to individual transfers."

This letter clearly indicates that the procedure provided for in Sec. 2 of Art. 8 aforesaid was abandoned and that individual transfers were effected.

Also, the copy of the "Contract to Transfer Districts according to Article 8 of the Equalization Law For 1942-1943", contained in the file submitted, shows no approval thereof by either the County Superintendent or the State Superintendent.

We now call attention to the nature of H. B. 284, Chap. 549, Acts of the 47th Legislature, R. S. Its heading is "Appropriation - Rural Aid To Public Schools." It is essentially an appropriation bill. Sec. 2 of Art. 8, supra, is a component part thereof. It is elementary that conditions of an appropriation bill must be complied with before moneys can be paid out thereunder. Neither can money be drawn from the Treasury but in pursuance of specific appropriations made by law. Art. 8, Sec. 6, Constitution of Texas.

The circumstances surrounding the question submitted evidently occurred as a result of an erroneous interpretation of law. While this is unfortunate and is to be regretted, the law cannot be changed thereby.

Our opinion in this connection is as above stated.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

L. H. Flewellen
Assistant

LHF:rt

OCT 16 1944

ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN